UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RAYMOND BRIAN RUIZ,

                Plaintiff,

     v.

SNOHOMISH COUNTY, et al.,

                Defendants.

Case No. C19-946-MJP-MLP

REPORT AND RECOMMENDATION

## I.  INTRODUCTION

This is a 42 U.S.C. § 1983 prisoner civil rights action. Plaintiff Raymond Brian Ruiz ("Plaintiff"), proceeding *pro se*, filed a second amended complaint ("SAC") alleging violations of his rights under the First and Fourteenth Amendment arising during his pretrial incarceration at the Snohomish County Jail ("SCJ") by Snohomish County Corrections Bureau ("SCCB") Chief Anthony Aston, SCCB Major Jamie Kane, and SCCB Deputy Stuart Nicholas ("Defendants"). (Pl.'s SAC (Dkt. # 20) at 3-7.) On October 26, 2020, Defendants filed a motion for summary judgment ("Defendants' Motion") arguing: (1) Plaintiff failed to demonstrate Chief Aston personally participated in the alleged Fourteenth Amendment violation; and (2) Plaintiff

REPORT AND RECOMMENDATION - 1

failed to provide an evidentiary basis for his First Amendment retaliation claims against Major Kane and Deputy Nicholas. (Defs.' Mot. (Dkt. # 34) at 11-19.)

Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends Defendants' Motion (dkt. # 34) be GRANTED, and that Plaintiff's claims be DISMISSED with prejudice.

## II.    BACKGROUND

### A.    Procedural History

On June 27, 2019, Plaintiff submitted his original complaint for filing, naming Snohomish County, the Snohomish County Risk Manager, and the SCCB as defendants. (Pl.'s Compl. (Dkt. # 5) at 1.) On the same day, this Court issued an Order to Show Cause based on numerous deficiencies in the original complaint. (Order (Dkt. # 6).) On September 5, 2019, this Court declined to serve Plaintiff's initial complaint and granted him leave to file an amended complaint. (Order (Dkt. # 9).)

On September 20, 2019, Plaintiff sent a letter to the Court requesting additional access and time to the Snohomish County law library to prepare his amended complaint. (Dkt. # 11.) On September 27, 2019, the Honorable Marsha J. Pechman issued a minute order advising Plaintiff the Court would not order the Snohomish County Sheriffs' Office, or the SCCB, to increase Plaintiff's access to the law library and that Plaintiff was free to file a motion for additional time to prepare his amended complaint. (Minute Order (Dkt. # 12).) On October 3, 2019, this Court granted Plaintiff additional time to file his amended complaint (dkt # 14), and on October 17, 2019, Plaintiff filed his first amended complaint. (Pl.'s Am. Compl. (Dkt. # 15).)

On October 23, 2019, Plaintiff filed a motion for leave to amend his first amended complaint (dkt. # 18), which this Court granted on October 29, 2019 (dkt # 19). On November 4,

1  2019, Plaintiff filed his SAC. On November 14, 2019, Plaintiff filed a motion to compel
2  discovery and a motion to cease and desist. (Dkt. ## 21-22.) Judge Pechman denied both motions
3  on November 22, 2019. (Order (Dkt. # 24).) On January 8, 2020, Plaintiff's SAC was served on
4  Defendants. (Dkt. # 25.) On March 6, 2020, Defendants filed their Answer. (Answer (Dkt.
5  # 30).)

6  On October 23, 2020, Defendants filed a motion for protective order and a motion to seal
7  regarding a SCJ security video from May 13, 2019, which depicts an incident underlying two of
8  Plaintiff's claims. (Dkt. # 33.) On October 26, 2020, Defendants filed their Motion (Defs.' Mot.
9  (dkt. # 34)), attaching declarations from Chief Aston (Aston Decl. (dkt # 36)), SCCB Deputy
10 Chad Spaetig (Spaetig Decl. (dkt # 37)), Major Kane (Kane Decl. (dkt # 38)), SCCB Lieutenant
11 Kevin Young (Young Decl. (dkt # 39)), and Deputy Nicholas (Nicholas Decl. (dkt # 40)). On
12 November 13, 2020, after the Court's grant of its previous motions (dkt. # 45), Defendants filed
13 a copy of the May 13, 2019 SCJ security video. (Dkt. # 46.) The Court ordered Defendants to
14 arrange for Plaintiff to have a supervised viewing of the security video through his prison
15 counselor. (Dkt. # 45.)

16 On November 23, 2020, Plaintiff filed his response to Defendant's Motion (Pl.'s Resp.
17 (dkt. # 48)), and on December 18, 2020, Defendants filed a reply (Defs.' Reply (dkt. # 52)).
18 After having an opportunity to review the SCJ security video, Plaintiff filed a supplemental
19 response on December 19, 2020. (Pl.'s Supp. Resp. (Dkt. # 55).) This matter is now ripe for the
20 Court's consideration.

21  **B.  Factual Background**

22  Plaintiff was previously incarcerated at the SCJ as a pretrial detainee. (Pl.'s SAC at 2;
23 O'Neal Decl. (Dkt. # 35) at ¶ 2, *id.*, Ex. A at 6-7.) On October 15, 2018, during Plaintiff's period

of incarceration, SCJ made Telmate tablets available for inmates to make video calls or purchase movies through their commissary account. (Young Decl. at ¶ 2.) SCJ inmates were additionally given a separate account through Telmate and able to transfer money from their commissary account to the Telmate account to make purchases on the tablet. (*Id.*) However, within an hour of the Telmate tablet system going live at SCJ, an exploit was discovered that made it appear money doubled in an inmate's Telmate account while no money was actually transferred from the inmate's commissary account. (*Id.* at ¶ 3; Kane Decl. at ¶ 2.) As a result, SCJ temporarily shut down the tablet service while Telmate repaired the exploit. (*Id.*) By the next day, the exploit was fixed and Telmate sent SCJ an accounting of the inmate accounts affected. (Young Decl. at ¶ 4.)

While the exploit was present in the Telmate system, the balance of Plaintiff's inmate account increased from $0.80 to $5120.80 within 24 hours. (*See* Pl.'s SAC, Ex. 1 (Dkt. # 20-1) at 14; Young Decl. at ¶ 5; *id.*, Ex. A at 7.) Except for an initial $0.80 in Plaintiff's account, each increase was double the previous amount, increasing in the following sequence: $5.80, $10.80, $20.80, $40.80, $80.80, $160.80, $320.80, $640.80, $1280.80, $2560.80, to a final account total of $5120.80. (*Id.*) Once SCJ discovered the exploit, SCJ removed the glitched funds from Plaintiff's account and returned it to the balance in the account prior to the launch of the Telmate system. (Young Decl. at ¶ 6.)

Plaintiff alleges that, on October 15, 2018, friends and family electronically deposited a total of $5,115.00 into his "Inmate/Resident Account." (Pl.'s SAC at 3-4.) He alleges that the following day, $5,120.00 was deducted from his account for a "Misc Charge," leaving him with only $0.80. (*Id.*) On November 2, 2018, Plaintiff filed a grievance for the return of the $5,120.00 to his account. (*Id.*; Young Decl. at ¶ 7; *id.*, Ex. B at 11.)

On November 11, 2018, Lieutenant Young responded to Plaintiff's first grievance request that Plaintiff was previously informed the balance in his Telmate account was the result of an error with the Telmate tablet service integration, but if Plaintiff could produce a receipt for the claimed deposit, he would review it. (Pl.'s SAC, Ex. 1 at 5; Young Decl. at ¶ 7; *id.*, Ex. B at 11.) On December 3, 2018, Plaintiff appealed his initial grievance, and on December 4, 2018, Major Kane denied Plaintiff's grievance on appeal. (Pl.'s SAC, Ex. 1 at 6.) Relevant to Plaintiff's claims in this matter, Major Kane noted in his grievance response that: "Your pursuit to capitalize on a mistake in our system is bordering on criminal conduct. I will caution you on pursuing this further. You are welcome to use the grievance system for legitimate purposes." (Pl.'s SAC, Ex. 1 at 6 (emphasis in original); Kane Decl. at ¶ 6.) Nonetheless, Plaintiff alleges he was assured by Lieutenant Young and SCCB Captain Brett Sundstrom that the money would be returned to his account. (Pl.'s SAC at 4.)

On or about November 18, 2018, Plaintiff submitted a claim for damages to the Snohomish County Risk Manager. (Pl.'s SAC at 4; *id.*, Ex. 1 at 1-4; O'Neal Decl., Ex. B. at 8-16.) On May 3, 2019, a Snohomish County deputy prosecutor denied Plaintiff's claim, explaining:

> Information available to this office indicates that the funds for which you seek reimbursement arrived in your account fraudulently. The 10 electronic transfers into your account on October 15, 2018, totaling $5,115, were the result of a temporary software systems error and a deliberate attempt to populate your account balance with monies that did not belong to you.

(*Id.*, Ex. 1 at 7; O'Neal Decl., Ex. C at 18.) On May 6, 2019, and on May 8, 2019, Plaintiff filed kite requests for documents to initiate the instant action and alleges he alerted SCCB staff on his intention to file a civil rights action concerning the funds. (Pl.'s SAC at 5; *id.*, Ex. 1 at 8-10.)

REPORT AND RECOMMENDATION - 5

On May 13, 2019, a lockdown was called in the SCJ module Plaintiff was housed in while he was out of his cell during recreation time. (Pl.'s SAC at 5-6; Spaetig Decl. at ¶¶ 3-4.) Deputy Spaetig initiated the lockdown after two other inmates started a fight under a stairwell in the module. (Spaetig Decl. at ¶ 4; O'Neal Decl., Ex. G at 28; Pl.'s Supp. Resp. at 1-2.) As Plaintiff was returning to his cell because of the lockdown, one of the inmates who had started the initial fight, identified as "Melton," ran through a line of inmates also attempting to return to their cells to strike Plaintiff. (*Id.*; Nicholas Decl. at ¶ 3.)

Deputy Nicholas made his way to the SCJ module and intervened between Plaintiff and Melton to break up the fight. (Spaetig Decl. at ¶ 5; Nicholas Decl. at ¶ 3; O'Neal Decl., Ex. G at 29.) While Deputy Nicholas attempted to stop the fight, another inmate, identified as "Martinez," charged and rolled over Deputy Nicholas, Plaintiff, and Melton. (Nicholas Decl. at ¶ 3; O'Neal Decl., Ex. G at 29.) Deputy Nicholas deployed his taser on Melton and ordered Plaintiff to get down on the ground. (*Id.*) Plaintiff did not immediately comply with Deputy Nicholas' request, and Deputy Nicholas delivered strikes to Plaintiff's shoulder and took him to the ground. (*Id.*) Deputy Nicholas removed his taser, but did not deploy it on Plaintiff, before eventually cuffing Plaintiff with his hands behind his back on the ground. (*Id.*) While Deputy Nicholas was engaged with Plaintiff, Deputy Spaetig separately secured Martinez. (*Id.*) Pursuant to SCJ policy, Plaintiff was then placed in maximum security holding following the incident. (Nicholas Decl. at ¶ 5; Spaetig Decl. at ¶ 7; Kane Decl. at ¶ 5.)

On May 27, 2019, Plaintiff filed a grievance against Deputy Nicholas based on the force used during the incident, but Plaintiff alleges SCCB did not respond. (Pl.'s SAC at 7; *see id.*, Ex. 1 at 18; O'Neal Decl., Ex. F at 26.) On December 18, 2019, Plaintiff submitted an additional grievance regarding the incident. (O'Neal Decl., Ex. E at 24.) SCCB Lieutenant Clinton Moll

responded to Plaintiff's grievance that, based on his review of the reports and security video, Deputy Nicholas took appropriate action because Plaintiff was aggressively engaged with another inmate. (*Id.*)

### C.   Plaintiff's Claims

Plaintiff's first claim alleges Chief Aston violated his Fourteenth Amendment rights by removing $5,120.00 in funds from his account. (Pl.'s SAC at 3-4.) Plaintiff alleges Chief Aston personally deprived him of the funds because he oversaw and was responsible for the daily operations of the SCJ and ultimately allowed the funds to be taken out of his account. (*Id.* at 4.)

Plaintiff's second claim alleges a First Amendment retaliation claim against Major Kane on the basis that Major Kane's grievance response to Plaintiff's initial request was a threat to Plaintiff. (Pl.'s SAC at 5.) Plaintiff asserts he understood Major Kane's grievance response to be a threat because "he cautioned [Plaintiff] with further retaliation if [he] pursued civil rights litigation in federal court." (*Id.*) Plaintiff alleges Major Kane acted on the alleged threat by ordering Deputy Nicholas to assault him during the May 13, 2019 lockdown incident. (Pl.'s SAC at 5-6.) Plaintiff additionally alleges he was wrongly placed on a 62.5-hour lockdown after the incident because he did not receive a rule violation prior to being placed in maximum security holding. (*Id.*; Pl.'s Resp. at 4, 9-10.)

Finally, Plaintiff's third claim alleges a First Amendment retaliation claim against Deputy Nicholas because he "willfully assisted Major Kane in an act of retaliation . . . because I made them aware of my plans to litigate this issue in federal court." (*Id.* at 7.) As requested relief, Plaintiff seeks: (1) money damages in the amount of $5,120.00 from Chief Aston; (2) money damages in the amount of $500,000.00 from Major Kane; (3) money damages in the amount of

$1,500,000.00 from Deputy Nicholas; (4) punitive damages in the amount of $6,000,000.00 from the SCCB and the SCJ; and (5) any other relief the Court deems fit. (*Id.* at 8.)

### III.   LEGAL STANDARDS

#### A.   Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary

judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). In addition, it is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted source omitted). The Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

A verified complaint, like Plaintiff's, "may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence." *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (internal quotations omitted); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). But allegations that are based merely on Plaintiff's belief are insufficient to oppose summary judgment, as are unsupported conjecture and conclusory statements. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

**B.     Section 1983 Claims**

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of his rights protected by the Constitution or created by federal statute; and (2) the violation was proximately caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform

an act he was legally required to do that caused the deprivation complained of. *Id.* (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

## IV.   DISCUSSION

Based on the record before the Court, there are no genuine issues of material fact regarding Plaintiff's claims against Defendants. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248 (A disputed fact is material if it "might affect the outcome of the suit under the governing law.") As explained further below, Plaintiff fails to present facts sufficient to maintain his claims.[1]

### A.   Fourteenth Amendment Claim

Plaintiff initially alleges Chief Aston personally deprived him of $5,120.00 in funds in his account, in violation of the Fourteenth Amendment, because he was responsible for the daily operations at the SCCB. (Pl.'s SAC at 3-4; Pl.'s Resp. at 7.) Defendants argue Chief Aston should be dismissed because Plaintiff fails to state a sufficient basis for supervisory liability. (Defs.' Resp. at 11-12; Defs.' Reply at 3-4.)

To establish a § 1983 claim, Plaintiff must show how each defendant personally participated in causing the alleged harm. *Arnold*, 637 F.2d at 1355. Where a defendant does not

---

[1] In addition to addressing the claims included in Plaintiff's SAC, Defendants' Motion raised that: (1) Deputy Nicholas did not engage in an excessive use of force during the May 13, 2019 lockdown incident; (2) Plaintiff failed to assert a sufficient basis for a due process claim regarding not being informed of a SCJ rule violation prior to being placed in maximum security holding; and (3) any claim regarding Plaintiff's conditions of confinement should be denied. (Defs.' Mot. at 2, 16-22.) Plaintiff's Response subsequently attempted to adopt the claims as addressed in Defendant's Motion. (*Compare* Pl.'s Resp. at 4, 9-10 *with* Defs.' Mot. at 2, 16-22.) Nevertheless, Plaintiff's SAC, as previously authorized to be served by Judge Pechman, only included Plaintiff's Fourteenth Amendment claim against Chief Aston and First Amendment claims against Major Kane and Deputy Nicholas. (*See* Pl.'s SAC at 4-7.) Plaintiff was also previously granted multiple opportunities to amend his complaint. (*See* dkt. ## 9, 19.). As such, the Court declines to consider any additional claims that were not originally presented in Plaintiff's SAC. *See* Fed. R. Civ. P. 8(a); *Pickern v. Pier 1 Imports, Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) ("Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.") (citation and internal quotation marks omitted).

1 directly cause the alleged harm, he or she may be liable for "setting in motion a series of acts by
2 others which the actor knows or reasonably should know would cause others to inflict the
3 constitutional injury." *Tatum v. Moody*, 768 F.3d 806, 817 (9th Cir. 2014) (quoted source
4 omitted). "A supervisor is only liable for constitutional violations of his subordinates if the
5 supervisor participated in or directed the violations or knew of the violations and failed to act to
6 prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Ybarra v. Reno*
7 *Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680-81 (9th Cir. 1984); *see also Monell v. Dep't*
8 *of Soc. Servs. of City of New York*, 436 U.S. 658, 690-94 (1978) (Section 1983 liability cannot be
9 established solely on the basis of *respondeat superior*).

10 Here, viewing the evidence in the light most favorable to Plaintiff, Plaintiff has failed to
11 demonstrate Chief Aston personally participated in any alleged deprivation of Plaintiff's
12 constitutional rights. It is clear from the record the funds Plaintiff alleges were stolen from his
13 inmate account were actually derived from his use of an exploit in the Telmate tablet system.
14 (*See* Young Decl. at ¶¶ 2-6; *id.*, Ex. A at 7.) This exploit was well-documented and addressed
15 with Plaintiff by various SCCB officials throughout his time at SCJ. (*See* Young Decl. at ¶ 7; *id.*,
16 Ex. B at 11; Kane Decl. at ¶¶ 2, 6.) Despite Lieutenant Young's response to Plaintiff's grievance
17 on the matter, Plaintiff additionally failed to come forward with any demonstrable evidence
18 suggesting friends and/or family actually deposited $5,120.00 into his account. (*See* Young Decl.
19 at ¶ 7; *id.*, Ex. B at 11.)

20 Plaintiff's allegation that Chief Aston was responsible for taking the funds in his account
21 is speculative and conclusory, especially in light of the fact the funds were obtained due to an
22 exploit that lasted less than 24-hours and synchronously aligned with Plaintiff's receipt of the
23 funds. (*See* Young Decl. at ¶ 6; *id.*, Ex. A at 7.) Moreover, Plaintiff fails to provide any evidence

1  demonstrating Chief Aston had a specific or causal role in removing the funds from his account

2  outside of his general supervisory responsibilities at the SCJ. *See Hernandez*, 343 F.3d at 1112;

3  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (vague and conclusory allegations are not

4  sufficient to withstand a motion for summary judgment). Plaintiff's claim against Chief Aston

5  should be dismissed in this action.

**B.     First Amendment Retaliation Claims**

Next, Plaintiff alleges that both Major Kane and Deputy Nicholas retaliated against him for attempting to file a claim in regard to the funds in his account, and more specifically, that Major Kane directed Deputy Nicholas to assault Plaintiff as a result during the May 13, 2019 lockdown incident. (Pl.'s SAC. at 5-7; Pl.'s Resp. at 7-10.) Defendants argue Plaintiff fails to demonstrate any necessary element of a First Amendment retaliation claim against Major Kane or Deputy Nicholas because, absent his own speculation, Plaintiff has no evidence to support a theory of retaliation. (Defs.' Resp. at 12-16; Defs.' Reply at 4-5.)

The First Amendment protects prisoners' right to file grievances and to pursue civil rights litigation in federal court without retaliation. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Silva v. DiVittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that prisoner's protected conduct, and that such action; (4) chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). To prevail on a retaliation claim, "a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation and

internal quotation marks omitted). The plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir. 1995). The Court evaluates a retaliation claim in light of the deference afforded to prison officials. *Id.* at 807.

Absent direct evidence, retaliatory motive may be shown by the timing of the allegedly retaliatory act and inconsistency with previous actions. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). Circumstantial evidence of motive that can defeat summary judgment usually includes: "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." *McCollum v. Cal. Dept. of Corrections & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (citation and internal quotation marks omitted). However, mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904-05 (9th Cir. 2014).

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt*, 65 F.3d at 806 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* (quoting *Sandin*, 515 U.S. at 482).

Plaintiff fails to state a First Amendment retaliation claim as to either Major Kane or Deputy Nicholas. Plaintiff's assertion that Major Kane threatened him in his grievance response is unsupported by the record. Major's Kane's response was appropriate given Plaintiff ostensibly attempted to profit off of the Telmate tablet system exploit in a manner Major Kane interpreted

as potentially unlawful. (*See* Pl.'s SAC, Ex. 1 at 6; Kane Decl. at ¶ 6.) Furthermore, Plaintiff's allegation that Major Kane's December 2018 response to his grievance appeal lead him to order Deputy Nicholas to assault Plaintiff during the May 13, 2019 lockdown incident, which was occasioned by two other inmates fighting, is speculative. *See Wood*, 753 F.3d at 904-05; *Hernandez*, 343 F.3d at 1112. There is no evidence in the record to suggest Deputy Nicholas was aware of Plaintiff's claims regarding the funds or that Major Kane spoke with Deputy Nicholas about the situation. Finally, Plaintiff's allegations against Major Kane fail to demonstrate that his filing of claims regarding the funds were a substantial or motivating factor behind Deputy Nicholas' use of force during the May 13, 2019 lockdown incident, and therefore, fail to provide a sufficient basis for a First Amendment retaliation claim. *See Brodheim*, 584 F.3d at 1271.

Plaintiff additionally fails to establish Deputy Nicholas acted with retaliatory motive. The record before the Court demonstrates Deputy Nicholas responded to the May 13, 2019 lockdown incident after Plaintiff was physically engaged with another inmate and resisted Deputy Nicholas' efforts to have him cease. (*See* Nicholas Decl. at ¶ 3; O'Neal Decl., Ex. G at 29.) The record also fails to evince that Deputy Nicholas' actions were spurred by Plaintiff's filing of claims concerning the funds or that his filing of claims was a substantial or motivating factor behind Deputy Nicholas' response to the May 13, 2019 lockdown incident. *See Wood*, 753 F.3d at 904-05; *Hernandez*, 343 F.3d at 1112; *Brodheim*, 584 F.3d at 1271.

Accordingly, viewing the evidence in the light most favorable to Plaintiff, Plaintiff's claims that Major Kane and Deputy Nicholas retaliated against him based on his filing of claims related to the funds in his account are conjecture. The Court recommends granting summary judgment to both Major Kane and Deputy Nicholas on Plaintiff's First Amendment claims.

V.     CONCLUSION

For the foregoing reasons, this Court recommends Defendants' Motion (dkt. # 34) be GRANTED, and that this matter be DISMISSED with prejudice. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed twelve pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 12, 2021**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Marsha J. Pechman.

Dated this 20th day of January, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge